**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

THE BRANNOCK DEVICE CO., INC.,

                                        **Plaintiff,**

        v.                                                      **5:04-CV-1300**
                                                                **(FJS/GJD)**

ABC INDUSTRIES, INC.; ABC TARGET,
INC.; and HOWARD SCHULMAN,

                                        **Defendants.**
_____

**APPEARANCES**                          **OF COUNSEL**

**BOND, SCHOENECK & KING, PLLC**          **GEORGE R. MCGUIRE, ESQ.**
One Lincoln Center                        **DAVID L. NOCILLY, ESQ.**
Syracuse, New York 13202
Attorneys for Plaintiff

**ABC INDUSTRIES, INC.; ABC**             **NO APPEARANCE**
**TARGET, INC., and HOWARD**
**SCHULMAN**
Defendants

**SCULLIN, Senior Judge**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

        Currently before the Court is Plaintiff's motion for entry of a default judgment against

Defendants ABC Industries, Inc. and ABC Target, Inc. (collectively "Defendants"), pursuant to

Rule 55(b) of the Federal Rules of Civil Procedure.[1]  Specifically, Plaintiff "seeks a default

judgment finding . . . ABC Industries, Inc. and ABC Target, Inc. . . . liable on each of [Plaintiff's]

_____

        [1] Plaintiff acknowledges that it was unable to effect service on Defendant Howard
Schulman.  *See* Plaintiff's Memorandum of Law at 1 n.1.  Therefore, it seeks entry of a default
judgment only against Defendants ABC Industries, Inc. and ABC Target, Inc.  *See id.*

claims for trademark infringement, false designation of origin, trademark dilution, civil

contempt, and breach of contract." *See* Plaintiff's Memorandum of Law at 1.  Moreover, "[i]n

connection with the default judgment, [Plaintiff] seeks a permanent injunction to prevent

[D]efendants from infringing [Plaintiff's] trademark in the future, an accounting of [D]efendants'

illicit profits, attorneys' fees and costs, and trebling of damages due to the [D]efendants [sic]

willful infringement of [Plaintiff's] trademark." *See id.*


## II. BACKGROUND

Plaintiff manufactures and sells a foot-measuring instrument known as the "BRANNOCK

DEVICE" ("the device").[2]  Plaintiff registered the device with the federal government under

Federal Registration No. 2,615,262 and uses the registration symbol "®" when advertising and

marketing the device.  *See* Complaint at ¶¶ 9, 11.

On October 2, 2003, Plaintiff commenced an action against ABC Industries, Inc. in this

District for trademark infringement on the ground that ABC Industries, Inc. sold, without

Plaintiff's authorization, foot-measuring instruments under the BRANNOCK DEVICE

trademark.  *See* Complaint at ¶ 14; Civil Action No. 5:03-CV-1212.  The parties settled that

action and entered into a "Stipulated Final Judgment and Order" that, among other things,

permanently enjoined ABC Industries, Inc. from

> (1) using any trademark or any other names or marks, designs,
> phrases, or logos that are confusingly similar to the BRANNOCK
> DEVICE trademark or any colorable imitation thereof; (2)

---

[2] Designed in 1927, "[t]he BRANNOCK DEVICE is a foot measuring instrument designed to accurately measure [an individual's] shoe size while allowing sufficient room for comfort."  *See* Plaintiff's Memorandum of Law at 1.

otherwise infringing on the BRANNOCK DEVICE trademark; (3) unfairly competing with Plaintiff Brannock by using the BRANNOCK DEVICE mark without authorization; and (4) diluting the distinctiveness of the BRANNOCK DEVICE trademark.

*See* Complaint at ¶ 16; Civil Action No. 5:03-CV-1212 at Dkt. No. 3.[3],[4]

Despite that permanent injunction, Plaintiff discovered that, on or about September 27, 2004, Defendants were, once again, using the BRANNOCK DEVICE trademark to sell foot-measuring devices.[5]  *See* Complaint at ¶ 18.  Plaintiff also discovered that at least two consumers had purchased Defendants' foot-measuring instrument under the mistaken belief that they were buying Plaintiff's authentic device.  *See id.* at ¶ 24.

As a result of these discoveries, Plaintiff commenced the present action on November 9, 2004, asserting claims of trademark infringement, false designation of origin, trademark dilution,

_____

[3] Magistrate Judge DiBianco signed the parties' "Stipulated Final Judgment and Order" on December 5, 2003.  *See* Civil Action No. 5:03-CV-1212 at Dkt. No. 3.

[4] The "Stipulated Final Judgment and Order" also provides that its provisions are

applicable to and binding upon Defendant, its agents, officers, subsidiaries, parents, affiliates, successors and assigns, and all others in privity and acting in concert therewith that receive notice of this Stipulated Judgment be [sic] personal service or otherwise as stated in and limited by Fed. R. Civ. P. 65.

*See* Civil Action No. 5:03-CV-1212 at Dkt. No. 3 at ¶ 2.

[5] After executing an internet search using both Google and Yahoo search engines, Plaintiff discovered that Defendants had included the BRANNOCK DEVICE mark in the "meta tags" of their website, www.abctarget.com.  *See* Complaint at ¶ 19.  "Meta tags" are codes that, although hidden from plain view, are encoded within a webpage and direct searchers to the website.  *See id.*  Furthermore, Plaintiff alleges that Defendants' website is listed as a "sponsored link," which means that an internet search for "brannock device" will direct the searcher to Defendants' website.  *See id.* at ¶ 21.

civil contempt, and breach of contract. *See* Dkt. No. 1.  Plaintiff seeks both monetary damages and injunctive relief. *See id.*  Plaintiff served Defendants with the summons and complaint on March 22, 2005.  *See* Dkt. No. 5.  Defendants failed to respond or otherwise appear in this action and, therefore, on June 22, 2005, Plaintiff requested and the Clerk of the Court entered notice of Defendants' default.  *See* Dkt. Nos. 6-7.

## III. DISCUSSION

**A.    Standard of review**

Under Rule 55(b) of the Federal Rules of Civil Procedure, a court may enter a default judgment where a party fails to respond to a plaintiff's complaint.  *See* Fed. R. Civ. P. 55(b).  As a prerequisite to the court entering a default judgment, the party seeking the default must request, and the clerk of the court must enter, a notice of default.  *See* Fed. R. Civ. P. 55(a).  Moreover, when a court enters a default judgment against a defendant, "the defendant is deemed to have admitted to the truth of the well-pleaded allegations of the complaint." *Eng'rs Joint Welfare, Pension, Supplemental Unemployment Benefit & Training Funds v. B.B.L. Constructors, Inc.*, 825 F. Supp. 13, 17 (N.D.N.Y. 1993) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080, 113 S. Ct. 1049, 122 L. Ed. 2d 357 (1993)).

As noted above, Plaintiff requested and the Clerk of the Court entered notice of Defendants' default on June 22, 2005.  *See* Dkt. Nos. 6-7.  Therefore, because Plaintiff has met the requirements of Rule 55(a), it may properly move for the entry of a default judgment under Rule 55(b).

**B.      Plaintiff's claims for trademark infringement and false designation of origin**

Plaintiff asserts that Defendants violated the Lanham Act, 15 U.S.C. §§ 1051-1127, by

infringing its registered trademark and by creating a false and misleading impression that their

foot-measuring instrument was in some way associated with Plaintiff's device.

Under the Lanham Act, a defendant is liable for trademark infringement if it uses a

plaintiff's registered mark, without authorization, in connection with the sale or attempted sale of

goods and/or services. *See* 15 U.S.C. § 1114(1). Likewise, a defendant is liable for false

designation of origin if it uses a word, term, name or symbol associated with a plaintiff's

registered mark without obtaining the plaintiff's authorization. *See* 15 U.S.C. § 1125(a)(1). With

respect to both of these claims, "[t]he central issue . . . is whether the unauthorized use of the

mark is 'likely to cause confusion.'" *Tommy Hilfinger Licensing, Inc. v. Nature Labs, LLC*, 221

F. Supp. 2d 410, 414 (S.D.N.Y. 2002) (quoting 15 U.S.C. § 1114(1); 15 U.S.C. § 1125(a)(1)(A)).

It is well-established that confusion exists "where consumers are likely to believe that the mark's

owner sponsored, endorsed, or otherwise approved of the defendant's use of the mark." *Id.*

(citation omitted).

In this case, Defendants' use of Plaintiff's BRANNOCK DEVICE mark is not only likely

to cause confusion but, according to Plaintiff's complaint, has, in fact, caused such confusion in

the minds of at least two consumers who purchased Defendants' foot-measuring instrument under

the mistaken belief that they were purchasing Plaintiff's device. *See* Complaint at ¶ 24.

Moreover, not only did Plaintiff not authorize Defendants' use of its mark, but the parties'

"Stipulated Final Judgment and Order" in Civil Action 5:03-CV-1212, expressly prohibited

Defendant ABC Industries, Inc. from using the BRANNOCK DEVICE mark. *See* Civil Action

5:03-CV-1212 at Dkt. No. 3.

Therefore, because Plaintiff's well-pleaded allegations establish that Defendants infringed its trademark and engaged in false designation of origin under the Lanham Act, the Court concludes that Defendants are liable to Plaintiff with respect to these two claims.


**C.     Dilution**[6]

The Lanham Act "defines dilution as 'the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of (1) competition between the owner of the famous mark and other parties, or (2) likelihood of confusion, mistake, or deception.'" *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 118 (2d Cir. 2006) (quoting 15 U.S.C. § 1127). Under the Act, to succeed on a dilution claim, a plaintiff must establish that "'(1) its mark is famous; (2) the defendant is making commercial use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services.'" *Id.* (quotation omitted).[7]

─────────────────────

[6] The Court notes that, although Plaintiff seeks a default judgment finding Defendants liable for dilution, it does not seek any damages with respect to this claim separate and distinct from the damages that it seeks with regard to its trademark infringement claim.

[7] Section 1125(c)(1) lists several factors that a court may consider to determine whether the mark is distinctive and famous:

> (A) the degree of inherent or acquired distinctiveness of the mark;
> (B) the duration and extent of use of the mark in connection with the goods or services with which the mark is used;
> (C) the duration and extent of advertising and publicity of the mark;

                                                      (continued...)

Under the Act, "dilution can adopt either of two forms: tarnishment or blurring." *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 416 (S.D.N.Y. 2006) (citation omitted). "'"Dilution by 'blurring' . . . occur[s] where the defendant uses or modifies the plaintiff's trademark to identify the defendant's goods and services, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product.'"" *Id.* (quotation omitted). On the other hand, tarnishment occurs when a trademark is "'linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context,' with the result that 'the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiff's unrelated goods.'" *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 507 (2d Cir. 1996) (quotation omitted). Finally, under the Act, "the only relief a plaintiff may obtain is an injunction upon a finding of a defendant's liability for diluting the distinctive quality of a famous mark, except in cases of willful dilution where damages also may be awarded." *Louis Vuitton Malletier*, 454 F.3d at 118 (citing 15 U.S.C. § 1125(c)(2)).

Plaintiff asserts that its mark is famous within the meaning of the Lanham Act and that

---

[7](...continued)
> (D) the geographical extent of the trading area in which the mark is used;
> (E) the channels of trade for the goods or services with which the mark is used;
> (F) the degree of recognition of the mark in the trading areas and channels of trade used by the marks' [sic] owner and the person against whom the injunction is sought;
> (G) the nature and extent of use of the same or similar marks by third parties; and
> (H) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

15 U.S.C. § 1125(c)(1).

Defendants' use of its mark has diluted its distinctive quality.  Specifically, Plaintiff claims that "[t]hrough its long, continuous use and extensive advertising and sales, Plaintiff Brannock's BRANNOCK DEVICE mark has become a famous brand throughout the United States and is of inestimable value due to the goodwill it represents."  *See* Plaintiff's Complaint at ¶ 13. Moreover, Plaintiff contends that, on or about September 27, 2004, it discovered that Defendants were using its mark in the "meta tags" of their website in order to sell their own foot-measuring device. *See id.* at ¶ 19.  These allegations are sufficient to establish that Defendants used the mark for commercial purposes after it became famous.  Finally, by alleging that at least two consumers purchased Defendants' foot-measuring instrument under the mistaken belief that they were purchasing Plaintiff's genuine BRANNOCK DEVICE, Plaintiff has demonstrated that Defendants' use of the BRANNOCK DEVICE mark has diluted its quality by diminishing its distinguishable identity.

Therefore, because Plaintiff's well-pleaded allegations establish that Defendants diluted Plaintiff's trademark, the Court concludes that Defendants are liable to Plaintiff with respect to its dilution claim.


**D.     Breach-of-contract claim**[8]

Plaintiff asserts a state-law breach-of-contract claim against Defendants based upon the allegation that Defendants failed to abide by the terms of the parties' "Stipulated Final Judgment

---

[8] The Court notes that, although Plaintiff seeks a default judgment finding Defendants liable for breach of contract based upon their failure to comply with the terms of the parties' "Stipulated Final Judgment and Order" in Civil Action No. 5:03-CV-1212, Plaintiff does not seek any damages for this claim separate and distinct from the damages it seeks with regard to its other claims.

and Order" in Civil Action No. 5:03-CV-1212.  Under New York law, "to establish a claim for

breach of contract, a plaintiff must prove the following elements: (1) the existence of a contract;

(2) breach by the other party; and (3) damages suffered as a result of the breach."  *Americorp*

*Fin., Inc. v. St. Joseph's Hosp. Health Ctr.*, 180 F. Supp. 2d 387, 390 (N.D.N.Y. 2001) (citing

*Terwilliger v. Terwilliger*, 206 F.3d 240, 245-46 (2d Cir. 2000)).

In this case, Plaintiff's well-pleaded allegations establish each of these elements.  First,

the parties' "Stipulated Final Judgment and Order" constitutes a contract.  This stipulation,

among other things, permanently enjoined Defendants from

> (1) using any trademark or any other names or marks, designs,
> phrases, or logos that are confusingly similar to the BRANNOCK
> DEVICE trademark or any colorable imitation thereof; (2)
> otherwise infringing on the BRANNOCK DEVICE trademark; (3)
> unfairly competing with Plaintiff Brannock by using the
> BRANNOCK DEVICE mark without authorization; and (4)
> diluting the distinctiveness of the BRANNOCK DEVICE
> trademark.

*See* Civil Action No. 5:03-CV-1212 at Dkt. No. 3 at ¶ 10.

Plaintiff also alleges that Defendants, in direct contravention of this injunction, have

"us[ed] the BRANNOCK DEVICE trademark, infring[ed] on the BRANNOCK DEVICE

trademark, unfairly compet[ed] with Plaintiff Brannock by using the BRANNOCK DEVICE

mark without authorization, and dilut[ed] the distinctiveness of the BRANNOCK DEVICE

trademark."  *See* Complaint at ¶ 50.  Finally, Plaintiff asserts that it has been damaged, i.e., lost

sales, as a result of Defendants' breach of the stipulation.

Therefore, because Plaintiff's well-pleaded allegations establish all of the elements of a

breach-of-contract claim, the Court concludes that Defendants are liable to Plaintiff with regard

to this claim.

**E.     Civil contempt**

Plaintiff requests that the Court find Defendants in contempt for failing to abide by the

parties' "Stipulated Final Judgment and Order" in Civil Action No. 5:03-CV-1212.  To prevail on

a civil contempt motion, the plaintiff must establish that (1) the order proscribing the conduct

was clear and unambiguous, (2) the evidence of noncompliance is clear and convincing, and (3)

the violator has not diligently attempted compliance with the order in a reasonable manner.  *See*

*King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995) (citation and quotation omitted).

The "Stipulated Final Judgment and Order," which concluded the parties' dispute in Civil

Action No. 5:03-CV-1212, clearly and unambiguously prohibited Defendant ABC Industries, Inc.

from, among other things, using any marks, designs, phrases, and/or logos which are confusingly

similar to Plaintiff's BRANNOCK DEVICE mark.  *See* Civil Action No. 5:03-CV-1212 at Dkt.

No. 3 at ¶ 10.  Furthermore, Plaintiff's well-pleaded allegations clearly and convincingly establish

Defendants' noncompliance with the terms of that stipulation.  For example, Plaintiff asserts that,

although the parties entered into their "Stipulated Final Judgment and Order" in December 2003,

a Google search for the term BRANNOCK DEVICE, conducted in September 2004, resulted in

the appearance of Defendants' website as a supplier of Plaintiff's device.  *See* Dkt. No. 1 at

Exhibit "C."  Finally, Plaintiff's well-pleaded allegations establish that Defendants have made no

effort, never mind a diligent effort, to comply with the parties' "Stipulated Final Judgment and

Order."

Although Plaintiff has sufficiently alleged the elements of a civil contempt claim and, by

their default, Defendants have acceded to the truth of these allegations, the Court, nonetheless, denies without prejudice Plaintiff's motion for a default judgment on this claim on the ground that Defendants have not violated any of this Court's orders in the present case.  Rather, because Plaintiff moves to hold Defendants in civil contempt for their violation of the parties' "Stipulated Judgment and Order" in Civil Action No. 5:03-CV-1212, Plaintiff should move for the requested relief in that action.[9]


### F.     Damages/relief

Plaintiff seeks several forms of relief in connection with its default judgment motion: (1) a permanent injunction to prevent Defendants from infringing its trademark in the future, (2) an accounting of Defendants' illicit profits, (3) treble damages due to Defendants' willful infringement of its trademark, and (4) attorney's fees and costs.[10]

---

[9] The parties' "Stipulated Final Judgment and Order" in Civil Action No. 5:03-CV-1212 specifically provides that "[t]his Court shall have continuing jurisdiction for the purpose of making or entering any further orders necessary for the construction or modification of this Stipulated Judgment, to enforce the terms and provisions of this Stipulated Judgment, or **to punish violations of this Stipulated Judgment.**"  *See* Civil Action No. 5:03-CV-1212 at Dkt. No. 3 at ¶ 13 (emphasis added).

[10] In its complaint, Plaintiff also requests that the Court

> direct[] . . . [D]efendants and each of their agents, servants,
> employees, attorneys, officers, subsidiaries, parents, affiliates, and
> all others in privity and acting in concert with them to deliver up
> for destruction all advertisements, labels, signs, prints, packages,
> wrappers, receptacles, computer files, electronic tapes, hard drives,
> floppy disks, or other computer memory and all other materials in
> their possession, custody, or control bearing the infringing marks,
> or any other reproduction, counterfeit, copy or colorable imitation
> of Plaintiff [sic] BRANNOCK DEVICE trademark, and all plates,

(continued...)

### 1. Permanent injunction

Plaintiff requests that the Court permanently enjoin Defendants from infringing its trademark in the future.  *See* Plaintiff's Memorandum of Law at 11.  Under the Lanham Act, courts have the "power to grant injunctions, according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office . . . ."  15 U.S.C. § 1116(a).  "'In a trademark infringement case, proof of a likelihood of confusion establishes both a likelihood of success on the merits and irreparable harm.'"  *Philip Morris USA Inc. v. Felizardo*, No. 03 Civ. 5891, 2004 WL 1375277, *7 (S.D.N.Y. June 18, 2004) (quoting *Brennan's, Inc.,* 360 F.3d at 129).

In its complaint, Plaintiff alleges that at least two consumers purchased Defendants' foot-measuring instrument under the mistaken belief that they were buying Plaintiff's authentic device.  *See* Complaint at ¶ 24.  Thus, Plaintiff established not only a likelihood of confusion, but actual confusion, as a result of Defendants' infringement of its trademark.  Since, by not responding to Plaintiff's complaint, Defendants have acceded to the truth of these well-pleaded allegations, the Court concludes that Plaintiff has established a likelihood of success on the merits of its claim and irreparable harm.  Accordingly, the Court grants Plaintiff's motion for a

---

[10](...continued)
> molds, matrices and other means of making or duplicating the
> same . . . .

*See* Complaint at WHEREFORE Clause at ¶ (iii).

However, Plaintiff does not seek this specific relief as part of its motion for entry of a default judgment.

permanent injunction against Defendants and permanently enjoins Defendants from infringing Plaintiff's registered trademark in the future.

### 2. An accounting of Defendants' illicit profits

Under the Lanham Act, a successful plaintiff is entitled "to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."  15 U.S.C. § 1117(a). To account for the defendant's profits, the Act requires that the plaintiff prove the defendant's sales, while the "defendant must prove all elements of cost or deduction claimed."  *Id.*  In this case, because Defendants have failed to defend or otherwise appear, Plaintiff asks the Court to "order an accounting of the defendants' infringing sales and a hearing for at least sixty (60) days from the entry of the default judgment to hear evidence and arguments on the extent of actual damages . . . ."  *See* Plaintiff's Memorandum of Law at 7.

When a court grants a motion for entry of a default judgment with respect to liability, it has two options: (1) it can hold a hearing to determine actual damages or (2) it can rely upon detailed affidavits and documentary evidence to establish damages.  *See Fustok v. Conticommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989) (holding that "it was not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in a default judgment.  Here, the District Court relied upon detailed affidavits and documentary evidence, supplemented by the District Judge's personal knowledge of the record . . . .").[11]

---

[11] The Court reiterates that, with respect to Plaintiff's dilution claim, its relief is limited to injunctive relief unless the Court finds that Defendants' dilution was willful.  *See Louis Vuitton*

(continued...)

-13-

Rather than schedule a hearing at this time, the Court will provide the parties with an opportunity to submit papers setting forth their positions with respect to the amount of actual damages.  Therefore,  the Court orders, that on or before **October 2, 2006**, Defendants shall file with the Court, and serve on Plaintiff's counsel, detailed affidavits and supporting documentation setting forth their contentions regarding the amount of profits that they earned as a result of their infringement of Plaintiff's trademark.  In addition, the Court orders that, on or before **October 16, 2006**, Plaintiff shall file with the Court, and serve on Defendants or their counsel, its response to Plaintiff's submissions.[12]

### 3. Treble damages

Plaintiff argues that, because Defendants willfully violated its trademark by failing to comply with the parties' "Stipulated Final Judgment and Order" in Civil Action No. 5:03-CV-1212, and by not appearing in this action, the Court should award it treble, rather than actual, damages.  The Lanham Act provides that, "[i]n assessing damages[,] the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount."  15 U.S.C. § 1117(a).

In *Ramada Franchise Sys., Inc. v. Boychuk*, 283 F. Supp. 2d 777 (N.D.N.Y. 2003), the court considered the plaintiff's argument that "it [was] entitled to a trebling of its actual damages because of the 'malicious, fraudulent, willful, and deliberate' nature of the infringement."  *Id.* at

---

[11](...continued)
*Malletier*, 454 f.3d at 118 (citing 15 U.S.C. § 1125(c)(2)).

[12] If, after reviewing the parties' submissions, the Court determines that a hearing is necessary, it will notify the parties accordingly.

791 (citation omitted).  The court began its analysis by explaining that "[t]he statute makes clear that an enhancement of actual damages must be for 'compensation[,] and not a penalty.'"  *Id.* (citing [15 U.S.C. § 1117(a)]).  In denying the plaintiff's motion for an enhancement of actual damages, the court reasoned that, because the plaintiff's basis for an enhancement was related solely to the defendant's "'malicious, fraudulent, willful and deliberate' [conduct], there [was] simply no compensatory, non-punitive basis for enhancing the actual damages awarded to [the plaintiff].'"  *Id.* at 792.  In essence, *Boychuk* stands for two propositions that are relevant to the Court's determination of Plaintiff's request for treble damages in this case.  First, a court should not award a plaintiff an enhancement of actual damages for punitive reasons.  *See id.*  Second, a court should not award a plaintiff an enhancement where an award of actual damages represents "adequate compensation to [a plaintiff] for the infringement . . . ."  *Id.*

In this case, the gravamen of Plaintiff's argument is that, because Defendants' conduct was intentional and willful, the Court should award it treble damages.  This is exactly the same argument that the court rejected in *Boychuk*.  Therefore, the Court denies Plaintiff's request for treble damages based upon this argument.  However, because the Court has yet to determine the amount of actual damages, the Court will permit Plaintiff, if it chooses, to argue in its papers in response to Defendants' submissions that an award of actual damages would not adequately compensate it for Defendants' infringement.

### 4. Attorney's fees and costs

Plaintiff seeks to recover attorney's fees and costs associated with its prosecution of this case.  Under the Lanham Act, in addition to actual damages, "[t]he court in **exceptional cases**

may award reasonable attorney fees to the prevailing party."  15 U.S.C. § 1117(a) (emphasis

added).  Where a defendant acts willfully, the "exceptional case" requirement is satisfied.  *See*

*Rolex Watch U.S.A., Inc. v. Brown*, No. 01 CIV. 9155, 2002 WL 1226863, *3 (S.D.N.Y. June 5,

2002) (citations omitted); *Tri-Star Pictures, Inc. v. Unger*, 14 F. Supp. 2d 339, 364 (S.D.N.Y.

1998) (finding that "it is an abuse of discretion for a district court to fail to consider an award of

attorney's fees in cases involving willful infringement" (citation omitted)).

Since the Court has concluded that Defendants willfully infringed Plaintiff's trademark,

the Court finds that this is an "exceptional case" and, therefore, grants Plaintiff's request for

attorney's fees and costs.

Plaintiff seeks an award of attorney's fees in the amount of **$7,588.75** and costs in the

amount of **$461.50**.  Plaintiff has provided the Court with contemporaneous time records

pertaining to the work that each attorney and paralegal expended on this case, the date on which

they performed that work, and the nature of the work that they performed.  *See* Declaration of

David L. Nocilly, dated March 14, 2006, at Exhibit "A."  Plaintiff has also calculated the amount

of attorney's fees requested using the rates that prevailed in this District prior to March 22, 2005,

i.e., $175 per hour for experienced attorneys, $125 per hour for attorneys with more than four

years experience, $100 per hour for attorneys with less than four years experience, and $65 per

hour for paralegals.[13]

Having reviewed Plaintiff's submissions, the Court finds that none of the hours that

---

[13] In *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, No. 03-CV-502, 2005 WL 670307 (N.D.N.Y. Mar. 22, 2005), the Court increased these rates as follows: $210 per hour for experienced attorneys, $150 per hour for associates with more than four years experience, $120 per hour for associates with less than four years experience, and $80 per hour for paralegals.  *See id.* at *6.

Plaintiff claims are excessive or redundant and that, because Plaintiff's attorneys expended most of their time on this matter prior to March 22, 2005, the Court awards Plaintiff the $**7,588.75** in attorney's fees that it seeks.

In addition, Plaintiff seeks reimbursement for the following costs that it has incurred in prosecuting this case: (1) service of process, $70.00; (2) facsimile charges, $14.00; (3) long distance telephone charges, $.44; and (4) electronic research charges, $170.37.  Since these costs are reasonable and are the types of costs that attorneys would charge their fee-paying clients, *see Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, No. 03-CV-502, 2005 WL 670307, *12 (N.D.N.Y. Mar. 22, 2005), the Court awards Plaintiff the **$461.50** in costs that it seeks.


## IV. CONCLUSION

After reviewing the entire file in this matter, Plaintiff's submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Plaintiff's motion for entry of a default judgment against Defendants on the issue of liability with respect to Plaintiff's claims of trademark infringement, false designation of origin, dilution and breach of contract is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's request for a permanent injunction prohibiting Defendants from infringing its registered trademark in the future is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's request for an accounting of Defendants' profits as a result of their infringement of Plaintiff's trademark is **GRANTED;** and the Court further

**ORDERS** that, on or before **October 2, 2006**, Defendants shall file with the Court, and

-17-

serve upon Plaintiff's counsel detailed affidavits, with supporting documentation, setting forth an accounting of the profits that they earned as a result of their infringement of Plaintiff's trademark; and the Court further

**ORDERS** that, on or before **October 16, 2006**, Plaintiff shall file with the Court, and serve upon Defendants or their counsel, its response to Defendants' submissions; and the Court further

**ORDERS** that Plaintiff's request for $7,588.75 in attorney's fees and $461.50 in costs is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's request for treble damages on the ground that Defendants' infringement of its trademark was willful is **DENIED**; however, Plaintiff may argue in its papers in response to Defendants' submissions that the Court should award it treble damages because an award of actual damages would not adequately compensate Plaintiff for Defendants' infringement of its trademark; and the Court further

**ORDERS** that Plaintiff's motion for a default judgment regarding its claim for civil contempt based upon Defendants' violation of the parties' "Stipulated Final Judgment and Order" in Civil Action No. 5:03-CV-1212, is **DENIED WITHOUT PREJUDICE** to Plaintiff moving for such relief in Civil Action No. 5:03-CV-1212; and the Court further

**ORDERS** that, on or before **September 12, 2006**, Plaintiff shall serve a copy of this

Order on Defendants by overnight mail at their last known address.


**IT IS SO ORDERED.**


Dated: September 11, 2006
   Syracuse, New York




          _____
       Frederick J. Scullin, Jr.
       Senior United States District Court Judge